UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KELSEY WILSON, | : |
| Plaintiff, | : |
| v. | : DOCKET NO. 1:20-cv-00016-TRM-CHS |
| HAMILTON COUNTY GOVERNMENT, | : |
| DEPUTY DANIEL WILKEY, in his capacity as a deputy sheriff for Hamilton County Government and, in his individual capacity, | : |
| Defendants. | : |

## DEPUTY DANIEL WILKEY'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

**COMES NOW** Defendant, Deputy Daniel Wilkey, by and through counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and files this Memorandum in Support of Dismissal of the Amended Complaint. Deputy Wilkey will demonstrate as follows:

## FACTS

Though the facts as alleged by Plaintiff are scattered and imprecise, Defendant will attempt to make the allegations clear.

It appears that in early 2018, Plaintiff claims harassing behavior began by Defendant at her place of employment, Walmart. Plaintiff claims Defendant came to the Walmart and searched her claiming that she looked to be on drugs. (Pl. Am. Compl. ¶12-19).

In the first set time period of the Amended Complaint, Plaintiff claims between March-September 2018, Defendant made numerous traffic stops of Plaintiff. (Id. at ¶20-21). The stops would end with Plaintiff ordered from her vehicle and a search conducted. (Id. at ¶22-24).

In May 2018, Plaintiff claims an incident where Defendant pulled her over, cited her and told her he would go to court with her. (Id. at ¶26).

Between April 2018- September 2018, Defendant would drive by the house of Plaintiff. (Id. at ¶30).

In June 2018, there was a stop of Plaintiff where Defendant stated it smelled like pot in the vehicle. (Id. at ¶31-32). The recounting of these events occupies Paragraphs 31-39 of the Amended Complaint.

In July 2018, Defendant stopped Plaintiff again and again stated that the car smelled of pot. (Id. at ¶40). The recounting of this continues through Paragraph 43 of the Amended Complaint.

Beginning in Paragraph 44 of the Amended Complaint, the Plaintiff sets forth, nonspecifically, that Defendant stopped her many times between July 2018-March 2019. Other than the general terms "unlawful traffic stops", "berate her" and "search", Plaintiff makes no specific allegation of wrongdoing by Defendant. Instead she relies on general concepts without alleging any specific behavior which supports a claim.

Paragraph 44 goes back in time to an incident in March 2019, where Defendant and another deputy went to a house no longer even occupied by Plaintiff seeking to serve her with a warrant. Plaintiff's twin sister, who is not a party to this action, called Plaintiff and this caused plaintiff to be upset. (Id. at ¶44-51).

Plaintiff filed suit in this matter on December 17, 2019. The Plaintiff amended the Complaint on that same date. Hamilton County removed this matter to this Court on January 14, 2020.

## LAW & ARGUMENT

### I. STANDARD OF REVIEW

This Court should grant a Rule 12(b)(6) motion when it appears "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."[1] In making this determination, "the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint."[2] The Court then should "consider[] whether the factual allegations, if true, would support a claim entitling the plaintiff to relief."[3] Case law dictates that this Court need not give any deference "to bare assertions of legal conclusions," however, as this Court "is not bound to accept as true a legal conclusion couched as a factual allegation."[4]

Though a complaint must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief,"[5] it nevertheless must "contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[7] As the Supreme Court has explained,

---

[1] Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

[2] Hamilton County Emergency Comm'cns Dist. v. Bellsouth Telecomms., LLC, 1:11-CV-330, 2012 WL 3611885, at *3 (E.D. Tenn. Aug. 20, 2012).

[3] Id. (quotations and citations omitted).

[4] Id. (quotations and citations omitted).

[5] Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

[6] Hamilton County, 2012 WL 3611885, at *3 (quotations and citations omitted).

[7] Id. (quotations and citations omitted).

"[p]lausibility ... is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8]

## II. STATUTE OF LIMITATIONS

### A. THE LAW

Plaintiff cannot prevail on the claims made in the Complaint as most of the claims fall outside the applicable statute of limitations. As such, there is no claim upon which relief may be granted as plaintiff failed to bring the suit in a timely matter.

Plaintiff sets forth six causes of action against Defendant. Those causes of action and their statute of limitation are:

        a.     42 USC §1983- Unreasonable Seizure (1 year)

        b.     42 USC §1983- Unreasonable Search (1 year)

        c.     Negligence (1 year)

        d.     Battery (1 year)

        e.     Assault (1 year)

        f.     Intentional Infliction of Emotional Distress (1 year)

While there is no statute of limitation set forth under 42 USC §1983, the Supreme Court directs district courts to apply the statute of limitation of the forum state for such an analogous action. (Owens v. Okure, 488 U.S. 235 (U.S. 1989) stating "...we again confront the consequences of Congress' failure to provide a specific statute of limitations to govern § 1983 actions. Title 42 U. S. C. § 1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law; § 1988 does not, however, offer any guidance as to which state

---

[8] Id. (quotations and citations omitted).

provision to borrow. To fill this void, for years we urged courts to select the state statute of limitations "most analogous"...".

For the actions brought by Plaintiff under 42 U.S.C. §1983, the most analogous Tennessee statute is <u>Tenn. Code Ann</u>. § 28-3-104 which sets forth a one year statute of limitation regarding negligence and injury to the person. This would cover the allegations covering unreasonable search and seizure and negligence.

Further, <u>Tenn. Code Ann</u>. § 28-3-104 covers battery, assault and intentional infliction of emotional distress, as all constitute injury to the person. Section 28-3-104 states in part:

> (a) The following actions shall be commenced within one (1) year after the cause of action accrued:
> (1) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, breach of marriage promise;

Seeing as Plaintiff filed suit in this matter on December 17, 2019, many of her claims fall outside the applicable statute of limitations. As demonstrated below, all of Plaintiff's claims, save one, happened outside the appropriate time period.

**B.  THE TIME PERIODS**

All time periods alleged by the Plaintiff as to when these alleged acts occurred are outside the one year limitation, except one. Plaintiff filed suit in this matter on December 17, 2019. Essentially, Plaintiff rested on her rights and waited before consulting counsel and filing this suit. Due to the age of the alleged violations by Defendant, Plaintiff cannot even remember specifically when these alleged stops and searches occurred.

1. **January-February 2018[9]**

The first period for consideration by the Court is between January-February 2018. The plaintiff recounts this period in Paragraphs 12-19 of the Amended Complaint.

During this time, Plaintiff recounts working at Walmart and being on a break at which time she met Defendant. Again, the Plaintiff notes no specific date. It was during this encounter that Defendant allegedly groped and fondled Plaintiff during a search.

Clearly, if true, this would have been an actionable event for consideration by this Court as a tort. If this event took place in early 2018, as a plain reading of the Amended Complaint would suggest, this would not have been part of a continuing stream of actions, but a discernable event for which the statute of limitations would have begun running when it happened.

2. **March 2018- September 2018**

The second period in the Amended Complaint runs from March 2018-September 2018. During this time, Plaintiff claims that Defendant stopped her numerous times and searched her person as well. (Pl. Am. Compl. ¶20-24). Plaintiff also recounts a specific incident in May 2018 where she was stopped and "searched" by Wilkey. (Id. at ¶26). She also recounts being stopped and searched unlawfully approximately 15 times during this period. (Id. at ¶25).

Again, these are all discernable events which could have possibly subjected Defendant to separate causes of action. If these stops occurred as claimed, and for purposes of this Motion the Court must assume such, Plaintiff should have filed the claim at that time or within one year; instead, Plaintiff waited.

---

[9] It is believed this period would be January- February 2018 as the next section states *"Continuing into 2018"* and Paragraph 20 states "Wilkey's conduct continued into 2018 between March 2018 to September of 2018"

The prejudice to Defendant is clear as he must now defend against allegations with vague time periods. Plaintiff simply accumulated a number of stops and waited until an opportune time to sue. Such is unfair to Defendant and forces him to defend allegations with few specifics.

### 3. April 2018- September 2018

Between April 2018- September 2018, Plaintiff recounts a number of other stops. (Pl. Am. Compl. ¶30-43). The same allegations are made where a stop of Plaintiff's vehicle occurred and there was a search of Plaintiff. There was also another instance of alleged inappropriate touching of Plaintiff.

### 4. July 2018- March 2019

The time between July 2018- March 2019 is the only time period in the Amended Complaint where Plaintiff is not completely outside the statute of limitations period. However, the events complained of are so vague and without definition, it is difficult for Defendant to respond.

Contained within Paragraph 44 are more traffic stops and searches, but they are not specifically recounted and there is no way to know what was within one year of the event and what was outside of it. Vagueness does a disservice to Defendant and violates Fed. R. Civ. P. 8 and does not give him enough information to formulate a response to the allegations.

Nevertheless, beginning in Paragraph 44[10] Plaintiff recounts an incident from March 2019, which is within the one year limitations period. However, the allegations covering this incident in Paragraphs 44-51 do not allege any type of cause of action on which relief may be granted.

Plaintiff claims that Defendant came to a house, at which she did not live, looking for her. (Pl. Am. Compl. ¶44). Allegedly, it was Plaintiff's mother's house and Plaintiff no longer resided at that address. Defendant had a warrant for Plaintiff's arrest and began searching around the

---

[10] This is the second Paragraph 44 as Plaintiff incorrectly numbered her paragraphs.

outside of the home. (Id. at ¶45-47). Defendant then asked Plaintiff's sister to call Plaintiff and when Defendant began talking, Plaintiff cried. (Id. at ¶49-50).

Nothing described about March 2019 forms a cause of action. Plaintiff was never seized as she was not even at the home. Plaintiff was never searched as she was not at the home.[11] The Amended Complaint couches the negligence claim in terms of the search and seizure of Plaintiff. (Id. at ¶123-130).

As for battery, battery requires some form of physical contact. (Runions v. Tenn. State Univ., 2009 Tenn. App. LEXIS 420 (Tenn. Ct. App. 2009) stating "A battery occurs when an individual intentionally inflicts an unlawful or offensive physical contact upon the person of another without the consent of the victim"). As Plaintiff was not even at the home, that would be an impossibility.

Assault, under Tenn. Code Ann. § 39-13-101 is defined as:

> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Such requires either physical contact or the threat of "imminent bodily injury." Again, Plaintiff was not present with Defendant.

Finally, as it relates to Intentional Infliction of Emotional Distress (IIED), Plaintiff has alleged nothing of such an outrageous nature that would cause an injury. At best, she spoke on the phone to someone and that elicited an unusual response.

---

[11] Even if unreasonable search did apply to an examination of the outside of the home, it would be a cause of action belonging to Plaintiff's mother as it was her home. The cause does not lie with Plaintiff.

Page 8 of 13
Case 1:20-cv-00016-TRM-CHS   Document 22   Filed 02/19/20   Page 8 of 13   PageID #: 152

Tennessee recognizes a claim for IIED and requires the conduct to be: (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. (Rogers v. Louisville Land Company et al, 367 S.W.3d 196, 205 (Tenn. 2012). Plaintiff, by her pleadings, has not alleged anything rising to the level required of either the first or second factor of an actionable IIED claim. A single phone call will not suffice, as it is only alleged that Plaintiff heard Defendant's voice and began sobbing.

As the one arguably timely filed claim of Plaintiff fails to state a claim on which relief may be granted, it must fail and be dismissed. Plaintiff is attempting to claim "serious mental injury" from an event at which she was not even present and her interaction by phone with Defendant was minimal. The simple act of making a phone call and hearing someone's voice and crying does not rise to the level of an actionable claim. The Amended Complaint fails to assert facts establishing the required elements of an IIED claim and, therefore, should be dismissed.

### III. THE CONTINUING VIOLATIONS DOCTRINE

In order to "bootstrap" all of these claims into one theory and cure the obvious statute of limitations issues, Plaintiff states the misconduct by Defendant in the Amended Complaint was part of one, continuous string of events. In other words, all actions by Defendant were part of one set of behavior allowing Plaintiff to sue at her leisure.

The Sixth Circuit recognizes a "continuing violations" theory under Title VII claims. Such refers to a policy or rule which discriminates against a protected class. Pittman v. Spectrum Health Sys., 612 F. App'x 810, 813 (6th Cir. 2015). However, the Sixth Circuit rarely extends such a theory to §1983 actions. Sharpe v. Cureton, 319 F.3d 259, 267 (6th Cir. 2003).

Moreover, each of the claims brought by Plaintiff are not amenable to the "continuing violations" doctrine. Reed v. Bentley, Case No. 3:99CV7181, 2000 U.S. Dist. LEXIS 2343, at *2-

4 (N.D. Ohio Jan. 20, 2000) (refusing to apply "continuing violation" doctrine to search claim); McKenzie v. Highland Cty., No. 1:18-cv-78, 2018 U.S. Dist. LEXIS 207053, at *8 (S.D. Ohio Dec. 7, 2018) (same, as to seizure); Robinson v. Genesee Cty. Sheriff's Dep't, No. 16-cv-13805, 2018 U.S. Dist. LEXIS 147953, at *14 (E.D. Mich. Aug. 30, 2018) (same, as to assault, battery, and intentional infliction of emotional distress); NCUA Bd. v. Ciuni & Panichi, Inc., No. 5:16-cv-455, 2019 U.S. Dist. LEXIS 5613, at *27 (N.D. Ohio Jan. 11, 2019) (same, as to negligence claim); Price v. Mgmt. & Training Corp., No. 3:15CV632, 2018 U.S. Dist. LEXIS 215019, at *5 (N.D. Ohio Dec. 21, 2018) (same, as to negligence and Eighth Amend. claims); Phat's Bar & Grill, Inc. v. Louisville-Jefferson Cty. Metro Gov't, No. 3:10-CV-00491-H, 2013 U.S. Dist. LEXIS 3108, at *14 (W.D. Ky. Jan. 8, 2013) (holding a series of allegedly unconstitutional raids not "continuing violations" because "[n]o additional relevant acts were necessary for the claim to accrue).

For every "stop" and "search" claimed by Plaintiff, each constitutes its own standalone claim. It could be its own cause of action. Yet, Plaintiff chose an alternative route which should lead to dismissal. Instead of complaining when an alleged incident happened, she waited until Defendant became a media story and then sought to include all of her claims for a number of years into one lawsuit.[12]

This suit is not one where each stop and search is dependent on another stop and search. Taking the Plaintiff's Amended Complaint at face value, each alleged incident is a separate and contained event and does not need additional claims to make it a viable suit.

Moreover, the time vagueness of the claims is also fatal to the Amended Complaint. It is reasonable to expect that if an event was so traumatic, one would remember a date or, if the events

---

[12] In fact, Plaintiff claims in Paragraph 93 of the Amended Complaint that she suffered this ongoing tort as far back as 2017. There is no reference in the Amended Complaint to any event in 2017. It is unknown to what she is referring.

were numerous, would keep a running list of dates. It does not appear Plaintiff did this as she only refers to numerous stops spaced out over several months. Plaintiff essentially demands Defendant respond to vague dates and complaints which fails to satisfy Notice Pleading required under the Federal Rules of Civil Procedure.

For each alleged tort suffered by Plaintiff, she should have to plead a certain date when the event occurred. Otherwise, Defendant must respond to vague date ranges alleging an unknown number of stops. It is impossible for Defendant to know what is properly before the Court and what has been lumped together with other events to cure the statute of limitations issue.

## CONCLUSION

Plaintiff's claims are time barred by the statute of limitations. Plaintiff cannot advance this suit under a continuing violations theory. Each event complained of, no matter how vague as to specifics, stands or falls on its own merits. If the facts in the Amended Complaint as taken as true, such that each unlawful stop and unlawful search happened as recounted, each of those events would have been a cause of action.

Plaintiff cannot now claim because the last alleged instance of interaction with Defendant occurred in March 2019, that she is entitled to claim damages from all alleged interactions with Defendant going back to 2017. Even the occurrence in March 2019 does not satisfy any cause of action by Plaintiff because Plaintiff was not even present for the interaction with Defendant.

**WHEREFORE PREMISES CONSIDERED**, Defendant respectfully requests dismissal of the Amended Complaint and all costs associated with the dismissal assessed against Plaintiff.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.


By: /s/ *James F. Exum III*
    James Exum (BPR No. 025377)
    Logan C. Threadgill (BPR No. 034470)
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
Telephone: (423) 756-3000
Facsimile: (423) 265-9574

*Attorneys For Defendant Deputy Daniel Wilkey*

## CERTIFICATE OF SERVICE

    I hereby certify that I have this day electronically filed the foregoing *Memorandum of Law in Support of Deputy Daniel Wilkey's Motion to Dismiss Amended Complaint for Failure to State a Claim* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

    This 19th day of February, 2020.

                                            */s/ James F. Exum III*
                                            James Exum